

# OFFICE OF
# THE ATTORNEY GENERAL
## AUSTIN, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

July 15, 1947

Hon. C. H. Cavness
State Auditor
Capitol Building
Austin, Texas

Opinion No. V-303

Re: Construction of Article 16, Sections 33 and 40, Texas Constitution, as applied to an independent contractor.

Dear Mr. Cavness:

In your letters of June 14th and 30th, you state that Mr. Jac L. Gubbels is a full-time employee of the State Highway Department, holding the position of "Head Landscape Architect," a position created by that Department which is not listed in the Appropriation Bill. His salary is paid out of the State Treasury by warrant. During the time Mr. Gubbels was so employed, he entered into an agreement with the Austin Independent School District, through its Board of Trustees, to conduct a survey of the Austin school system, and to make recommendations for the locations for new school sites in connection with a program of development through the year 1966. Under such contract, and while employed by the State Highway Department, Mr. Gubbels conducted the survey and made recommended locations for thirty-one school sites at an agreed fee of $750.00 per site. A check was issued to Mr. Gubbels on June 4, 1947, by the School Board in the sum of $23,250.00 for such services. You disclose that such check was paid from the proceeds of the sale of certain building bonds issued "by the Austin Independent School District and/or the City of Austin." You further state that: "We have not ascertained as to whether any portion of Mr. Gubbels' School District duties were performed during working hours for which he was being paid as an employee of the State Highway Department."

Your question is whether Mr. Gubbels' employment by the Austin Independent School District, concurrent with full-time employment by the State of Texas, comes within the prohibition of Section 33 of Article 16 of our State Constitution.

At common law (adopted as the law of Texas in Article 1, R. C. S., when not inconsistent with our statutes or Constitution), "there is no limit to the number of offices which may be held simultaneously by the same person, provided that neither of them is incompatible with any other; and this rule extends to offices of the highest grade, and which involve, for their adequate performance, the greatest expenditure of time and labor." Throop, Public Officers, p. 33. It is stated in Vol. 2 (Rev.) McQuillin on Municipal Corporations, at page 144, that, "The same person may hold different offices which are not incompatible, unless forbidden by law." 43 Am. Jur. 153 recites that: "In the absence of express or implied statutory provision to the contrary, an officer who holds two or more separate and distinct offices, not incompatible, is entitled to the compensation attached to each office." And in 46 Corpus Juris, page 941, it says, "At common law the holding of one office does not of itself disqualify the incumbent from holding another office at the same time, provided there is no inconsistency in the functions of the two offices in question . . . The inconsistency . . . does not consist in the physical impossibility to discharge the duties of both offices, but lies rather in a conflict of interest, as where one is subordinate to the other . . . or has the power to remove the incumbent of the other, or to audit the accounts of the other."

Meecham on Public Offices and Officers, p. 269, announces the rule to be that: ". . . the mere physical impossibility of one person's performing the duties of the two offices as from the lack of time or the inability to be in two places at the same moment, is not the incompatibility here referred to. It must be an inconsistency in the functions of the two offices, as judge and clerk of the same court, claimant and auditor, and the like."

Under Texas cases, applying the common law rule, various positions have been held incompatible; that is, city secretary and city recorder, State v. Brinkerhoff, 66 Tex. 45; school trustees and town aldermen, Thomas v. Abernathy County Line Independent School District (Comm. App.) 290 S.W. 152; holding a position with the Texas Employment Service and also private employment imposing the same duties, A. G. Opinion O-2929; County Commissioner and trustee of a

rural high school district, A. G. Opinion O-5145. See case note by John W. Stayton, 12 Tex. Law Rev. 367. Applying these tests, it was held in A. G. Opinion V-63 (1947) that the offices of County Commissioner and trustee of an independent school district were not incompatible. That opinion quotes the following from Knuckles v. Board of Education (Ky. 1938), 114 S.W. (2d) 511: "'. . . incompatibility is recognized whenever one is subordinate to the other . . . or is subject to supervision by the other, or where a contrarity and antagonism would result in the attempt by one person to discharge the duties of both. . . . two offices are incompatible where the incumbent of one has the power to remove the incumbent of the other, . . . and it also exists where the incumbent of one office has the power of appointment as to the other office, or to audit the accounts of another, or to exercise a supervision over another.'"

But the position Mr. Gubbels held with the Highway Department of the State in connection with highway beautification is not incompatible, under the tests laid down by the common law rules of decision, with that of locating school sites. The two have little or nothing in common. Neither is subordinate to the other. The incumbent of neither has a supervisory or appointive power over the other. There is no inconsistency in the functions of either, as the word "inconsistency" is used in the common law.

All of these authorities provide, in substance, that "unless prohibited by law" a person may hold more than one position with the State, assuming no incompatibility. It therefore becomes necessary to see what prohibitions have been written into our law, and what changes have been made in the common law as applicable to Texas.

The framers of our Texas Constitution made two exceptions to the common law rule in Article 16, Sections 33 and 40. Section 40 provides that "No person shall hold or exercise, at the same time, more than one civil office of emolument . . . ." (Emphasis is added throughout this opinion.)

The distinction between a public "officer" and an "employee" of the State is clearly drawn in an Attorney General's opinion of September 22, 1913, by C. M. Cureton, later Chief Justice of the Texas Supreme

Court: An "officer" exercises some governmental func-
tion; he is invested with some portion of the sover-
eignty. A public office is a right, authority, and duly
created and conferred by law, the tenure of which is
not transient, occasional or incidental. Among the cri-
teria given for determining whether an employment is a
public office or not, are the requirements of an offi-
cial oath and bond; that the powers are granted and con-
ferred by law and not by contract. The "officer" is
generally answerable for misfeasance in office, and is
responsible for acts of his "employees." Employment,
on the other hand, is established by contract. It in-
volves performing such duties as are prescribed by the
employing agent. The "employee" is often subject to
discharge at the will of the "officer" to whom he is
responsible. It was specifically held in Olmstead v.
The Mayor of New York, 42 N. Y. Super. Ct. 481, that a
landscape architect (a position similar to that of Mr.
Gubbels), who was regularly employed in the Department
of Public Works, was an "employee" of the Commissioners
and not a public officer. These matters are fully dis-
cussed in Loard v. Como, 137 S.W. (2d) 880, writ re-
fused; Knox v. Johnson, 141 S.W. (2d) 698, writ refused;
Meecham, Public Officers, Ch. 1; 42 Am. Jur., Public
Officers, Sections 2-16; 34 Tex. Jur., Public Officers,
Sections 2-4; and in Annotations 53 A.L.R. 595, 93
A.L.R. 333, 140 A.L.R. 1076.

Under the above rule, the place Mr. Gubbels
holds with the Highway Department is clearly not an
"office" but is a mere employment. Hence Section 40 is
not applicable.

The second prohibition placed in our Consti-
tution is Section 33 of Article 16. The pertinent por-
tions of that section read:

"The accounting officers of this State
shall neither draw nor pay a warrant upon
the treasury in favor of any person, for
salary or compensation as agent, officer or
appointee, who holds at the same time any
other office or position of honor, trust or
profit under this State . . . ."

While school districts do not enjoy certain
privileges and immunities enjoyed by the State (for ex-
ample, the two year statute of limitation is applicable
to them, Hatcher v. State, 125 Tex. 84, 81 S.W. (2d)

499, noted 14 Tex. Law Rev. 411), it is generally held that they are state agencies, erected and employed for the purpose of administering the State's system of public schools. Love v. City of Dallas, 120 Tex. 351, 40 S.W. (2d) 20; Lewis v. Independent School District of Austin, 139 Tex. 83, 161 S.W. (2d) 450; Dupuy v. State, 125 Tex. Crim. 595, 121 S.W. (2d) 1003; 37 Tex. Jur. 865.

Under the above cases, a person holding an "office or position of honor, trust, or profit" in a school district, would be holding the same "under this State."

However, from the facts given by you, it appears that Mr. Gubbels did not hold an "office" or "position" in the ordinary sense. He was not carried on the School District's payroll as an agent, servant, or employee. He was not employed on a yearly or monthly basis. He did not have anyone to tell him when or how to work, or what hours to keep; he was responsible to no one in the manner of his work; he had no desk, or office hours, or title. He was free to employ assistants without consulting anyone; and he, not the School Board, would have been responsible for his own and the torts of such assistants.

An "independent contractor" is defined in Section 2 of the Restatement of the Law of Agency as follows: "An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking."

In distinguishing an independent contractor from an employee or servant, 2 American Jurisprudence 17 says, "An independent contractor may be distinguished from an agent in that he is a person who contracts with another to do something for him, but who is not controlled or subject to the control of the other in the performance of such contract, but only as to the result. A principal, on the other hand, has the right to control the conduct of an agent with respect to matters intrusted to him. The theory which in many cases is adopted to differentiate between an agent and an independent contractor is that one is to be regarded as an agent or an independent contractor according to whether he is subject to, or free from,

the control of the employer with respect to the details of the work. . . ."

Justice Sharp in Industrial Indemnity Exchange v. Southard, 138 Tex. 531, 160 S.W. (2d) 905, laid down the following tests: "The general rule relating to independent contractors rests upon certain recognized tests; although such tests are not necessarily concurrent with each other, nor is each test in itself controlling. Such tests are: (1) The independent nature of his business; (2) his obligation to furnish necessary tools, supplies, and material to perform the job; (3) his right to control the progress of the work, except as to final results; (4) the time for which he is employed; and (5) the method of payment, whether by time or by the job. There are other tests, but the foregoing are considered the essential tests upon which such rule is based."

Mr. Gubbels was not, therefore, under the above criteria, an agent or employee of the School District. His position was that of an independent contractor.

The question then remains as to whether an independent contractor who enters on a contractual agreement with a school district holds an "office or position of honor, trust, or profit," within the meaning of Section 33.

A similar situation was presented to this department in 1927. Mr. J. A. Phillips, a member of the Texas State Board of Accountancy, desired to ascertain whether, while holding that position he could either (1) receive regular pay as an employee of a state agency for doing accounting work, or (2) perform such services as an independent contractor. In an able opinion by Mr. D. A. Simmons, later president of both the Texas Bar Association and the American Bar Association, this office said,

". . . . Therefore, we can advise without hesitancy that being a member of the State Board of Public Accountancy under the Constitution you could not be paid compensation as an agent, officer or an appointee of the State or any of its subdivisions. If, however, the employment you have in mind is as an independent contractor and not as an

agent, officer or appointee of the State,
we have found no provision of the Consti-
tution or law which would prevent you from
accepting such a contract while serving as
a member of the State Board of Public Ac-
countancy. We take it that this board has
nothing to do with letting such contracts
or fixing in any manner the compensation
therefor." (Op. No. 2671, Bk. 62, p. 109;
Biennial Report 1926-28, p. 406)

That opinion has never been overruled, and is
similar to the situation presented by Mr. Gubbels. It
was followed in an opinion by First Assistant Attorney
General Scott Gaines in 1937, wherein it was held that
the County Auditor of Harris County could take inde-
pendent contracts to audit the books of independent
school districts where such services were not required
of him as County Auditor.

Many similar facts were involved in City and
County of San Francisco v. Boyd (Cal. Sup., 1941), 110
P. (2d) 1036. The city charter provided that, "All
positions . . . and offices shall be included in the
civil service." The city made a contract to employ an
expert on traffic control at a large salary to make
recommendations on traffic planning. The Comptroller
objected to the contract because, among other reasons,
it failed to put the planner under civil service. In
holding the contract valid, and in holding that he held
neither an "office" nor a "position," but was an inde-
pendent contractor, the Court said,

"The proposed contractor is not to
be placed in any position provided for by
the charter. He is to be engaged under a
contract to do a specific job and all of
the assistants which he will employ from
the typist in his office to his most high-
ly paid engineer are to be instrumentalities
of his own choosing and for whom he is to
be responsible. They do not become city
employees in the sense of that word, as
used in reference to the classified service,
but are to be employees of the engineer
whose contract requires that he supply the
city with estimates, plans, programs and
reports, such as will enable the munici-
pality to advance the public welfare by the
improvement of conditions with respect to

which his services will be rendered.

> ". . . . Because the supervisors in the
> exercise of their discretion prefer to keep
> check upon the details of the cost of the
> work to be done by the contractor rather
> than to contract for the survey to be done
> for a lump sum does not alter the fact that
> the contractor is employed as an independent
> contractor to do a specific job and to get
> for himself a definite profit."

It is, therefore, our opinion that Sections 33
and 40 of Article 16 of our Constitution do not prohibit
Mr. Gubbels from taking work as an independent contrac-
tor while employed by the State Highway Department.
Whether Mr. Gubbels fully performed his duties to the
Highway Department is a matter for the officials in
charge of that Department to decide, and for which they
are responsible. Under Section 14(c) of Senate Bill
317, Acts 49th Legislature, p. 945 (State Departmental
Appropriation Bill), it is provided that no salary shall
be paid any person unless such person actually dis-
charges his assigned duties.

If Mr. Gubbels fully performed all the duties
assigned to him by the Highway Department during the
hours required by the Departmental Appropriation Bill,
it was not a violation of the law for him to perform, or
have performed, the work required on the school loca-
tions "on his own time" before and after Highway Depart-
ment working hours. On the other hand, if he did not
discharge the duties and work during the hours required,
he is entitled to no pay for such period of time under
the provisions of S. B. 317, supra.

This opinion covers only the question of the
legality of Mr. Gubbels' contract and payment as an in-
dependent contractor by the School Board while he was
acting and receiving pay as an employee of the Highway
Department. The fact that the law does not prohibit
such an arrangement should not be considered as an ap-
proval thereof as a matter of public policy. Neither
should this opinion be considered an approval of the
actions of either the School Board or the Highway De-
partment as a matter of public policy. It is difficult
to believe that State employees can engage in outside
work of such magnitude without some loss of time and

thought to the State's business. Similarly, in most cases, a School Board would not receive as much thought and planning on such a project from one who is occupied eight hours each day on another job. Be that as it may, until and unless the Legislature speaks on this subject, it is entirely up to the State Department and the School Board to determine their respective policies concerning the matters involved in this case.

### SUMMARY

An employee of the State Highway Department is not prohibited by law from entering into and executing a contract, as an independent contractor, with an independent school district for work to be performed before and after Department hours, where there is no incompatibility in such work and no failure to discharge State duties. Such practice is questioned as a matter of public policy, but until the Legislature speaks on the subject, it is for the State Department and the School Board to decide their respective policies in such matters. (Construing Texas Constitution, Art. 16, Sections 33 and 40.)

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By Joe R. Greenhill

Joe R. Greenhill
Executive Assistant

APPROVED:

Price Daniel
ATTORNEY GENERAL

JRG:erc